D. M. TUCKER, Respondent, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, April 6, 1896.

1. **Damages:** FLOODING LAND: VERDICT. The evidence in this case as to the damage of overflowing plaintiff's land by reason of an embankment is considered and found not to exceed $2.50 and the verdict for $500 is set aside since the preponderance of the evidence necessarily implies passion, prejudice, and partiality on the part of the jury.

2. **Parties:** IMPROPER: APPEARANCE AND DISAPPEARANCE. Certain parties whose appearance and disappearance the record fails to account for are held to be improper and their disappearance no cause for complaint.

*Appeal from the Callaway Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*Bailey & Tincher* for appellant.

(1) The trial court had no authority to enter the judgment against this defendant only. Under the verdict of the jury, the judgment should have been entered against all the defendants. They were parties defendant, and the finding was against them jointly. For this reason the motion in arrest should have been sustained. (2) The court erred in giving instructions numbered 1 and 2 in behalf of plaintiff. They do not properly declare the law of the case. (3) The verdict was excessive and manifestly the result of prejudice and passion. If entitled to recover at all, fifty-one cents is the amount of damages the evidence tends to prove, and the trial court should have either sustained defendant's motion for a new trial, or reduced

the amount to a proper sum. *Furnish v. Railroad,* 102 Mo. 438; *Voegeli v. Marble & Granite Co.,* 56 Mo. App. 678; *Adams v. Railroad,* 100 Mo. 555.

*I. W. Boulware* for respondent.

(1) Plaintiff asked no judgment against the self-made defendants, J. C. Yantis and the Fire Brick Company. No cause of action is stated against them in the petition; nor does the evidence show any cause for judgment against them. (2) The judgment was against the right party. If wrong this court has the right to render the proper judgment. *Pettingill v. Jones,* 30 Mo. App. 280; *Hunt v. Railroad,* 87 Mo. 607, and authorities cited. The plaintiff had the right to say against which defendant he would take judgment *de me lioribus damnis.* 12 Am. and Eng. Encyclopedia, 62; Rap. & L. Law Dictionary. (3) Appellant virtually conceded that plaintiff is entitled to nominal damages. If he is entitled to damages at all he is entitled to full compensation for the injury suffered. (4) Where a railroad builds a culvert or other passageway through or under its embankment it is bound to keep same open for the free passage of water. *Scott v. Railroad,* 36 N. Y. 214; *Payne v. Railroad,* 112 Mo. 6; *McKee v. Railroad,* 49 Mo. App. 174; *Jones v. Railroad,* 84 Mo. 151; *Rychlicki v. City of St. Louis,* 98 Mo. 497; *Moss v. Railroad,* 85 Mo. 86. (5) The question of the amount of the verdict is peculiarly one for the jury and the appellate court will not interfere with it on the ground of excessiveness unless it clearly appears that such verdict was the result of improper motives or conduct on the part of the jury. *Hanlon v. Railroad,* 104 Mo. 381; *Griffith v. Railroad,* 98 Mo. 176; *Whalon v. Railroad,* 60 Mo. 323; *Draim v. Railroad,* 86 Mo. 574.

SMITH, P. J.—This is an action for damages. The petition is in two counts. In the first, it is alleged, in substance, that defendant constructed an embankment fifteen feet high and four hundred feet long, on which it placed its roadbed, and which embankment was within about fifty feet of plaintiff's lands; and that defendant neglected to maintain suitable ditches along the sides of its railroad bed, where the same is constructed along and near plaintiff's said lands, to connect with ditches, drains, and water courses, so as to afford sufficient outlets to carry off the water along said railroad. That at times the surface water from plaintiff's land—about two hundred acres—flowed south until it encountered, in its onward course, the defendant's roadbed, which obstructed it and caused it to flow back and overflow one acre and a half of plaintiff's land and there remain until removed by evaporation. That by reason of the neglect of the defendant to construct and maintain said ditches along the sides of its said roadbed, at the place, aforesaid, to connect with ditches, drains, and water courses, so as to afford a sufficient outlet to carry off the water so obstructed, plaintiff's lands have been overflowed to the depth of eight feet, and by reason thereof the herbage on said lands has been destroyed. That said overflowed lands could not be cultivated or used for any purpose. That the approach to said lands from the south, and to the railroad depot and city of Fulton from the north, was cut off. That for the most part of the year the water so obstructed was kept standing in a pool on said lands in a stagnant and foul state, which thereby became a nuisance, to the damage of the plaintiff in the sum of $10,000.

The allegations of the second count were but a repetition of those of the first, except that the second supplemented the first with the further allegation, that:

"When said railroad was constructed, to wit, prior to the first of April, 1883, there was constructed in the roadbed and embankment of said railroad, immediately south of said lands of plaintiff, a culvert or opening within about eight or ten feet of the top of said railroad bed, by which all the water which flowed to said roadbed could escape and pass off through said roadbed, after reaching the elevation of said culvert. That on or about January, 1891, defendant unlawfully and negligently caused and permitted said culvert to be closed or partly closed, raised about eighteen inches from its original position, over and above said original culvert, and caused same to flow back, overspread and overflow two acres of the land of the plaintiff to the depth of two feet." That by reason thereof the herbage on plaintiff's lands was destroyed, etc., to the plaintiff's damage in the sum of $5,000, etc.

The defendant's answer pleaded that said embankment was constructed in 1870, with the knowledge, consent, and acquiescence of plaintiff, and that under an agreement with the plaintiff the defendant had, as soon as said pond of water was formed, constructed at great expense its depot and water tank immediately south of said pond, and that by reason of the premises defendant had acquired a vested right to maintain the water in said pond on plaintiff's land. The answer further alleged that it and its grantors had had the continuous, adverse, open, and peaceable use and occupancy of said pond of water and the land covered by it for more than twenty years next prior to the institution of the suit, using the water therefrom to supply its boilers, cars, and depot in operating its railway, etc. There were other matters of defense alleged that need not be set forth in this connection.

There was a trial by jury which resulted in a verdict for the defendant on the first count and for the

plaintiff on the second count in the sum of $500. The judgment was for plaintiff, accordingly, from which defendant appealed.

As the plaintiff acquiesced in the verdict against him on the first count, the controversy as to the matters within the limits of the allegations of that count are forever closed and are consequently not before us for review. That count is eliminated and only such questions as arose at the trial on the second count can be noticed by us.

Several questions have been discussed by counsel in their briefs, but the only one of them presented by the record for our determination is that of damages. The court gave at the request of plaintiff the following instruction, numbered 2, to wit: "If the jury find from the evidence that the defendant, the Chicago & Alton Railroad Company, since the first day of January, 1891, and before the institution of this suit, as charged in the second count of plaintiff's petition, caused or consented to raising said culvert through the embankment near plaintiff's land as charged in the petition, to be elevated and raised eighteen inches or less, and the culvert or opening was lessened in size from a stone culvert thirty-six inches square to a pipe sixteen inches in diameter, and that such change caused the water to overflow an additional quantity of plaintiff's land against the will and consent of plaintiff, then they will find for the plaintiff on said second count in the petition."

It will be seen that this instruction was based on the second count in the petition and required the jury to determine the amount of damages the plaintiff had sustained, if any, in consequence of the defendant having elevated the culvert through the new embankment and thereby causing the water to overflow an additional

quantity of plaintiff's land. The inquiry of the jury was thereby restricted to the ascertainment of the damages the plaintiff had sustained on account of the increased overflow of his land. There was no other item of damages thereby referred to the jury for them to determine. All the other items of alleged damages were determined adversely to the plaintiff's claim by the verdict of the jury for defendant on the first count.

It appears from the undisputed evidence that an embankment for a spur of defendant's railroad had been constructed through said pond, between the plaintiff's land and the defendant's roadbed, and that a sewer pipe of about fifteen inches in diameter had been placed therein for the passage of the water accumulating against it. This sewer pipe was placed in the spur embankment some three and one half inches above the level of the culvert through the railroad embankment on which the main track was located. It appears further that the spur embankment was composed largely of cinders and brickbats and was quite porous, and that the water would rapidly percolate through it, so that, collecting on the north of it, it would rapidly subside to a level with the culvert in the main embankment. The additional land that would be temporarily overflowed by reason of the elevation of the sewer pipe through the spur embankment above that of the culvert was, according to the greatest estimate, between one thirtieth and one fortieth of an acre. The sewer pipe had been there about three years before the commencement of the suit. The annual rental value of the land was shown to be about $2.50 per acre. The whole amount of damages resulting from the additional overflow could not by any sort of computation have been made to exceed $2.50. There is no evidence of any other damage to the land. The jury were not authorized by the plaintiff's said instruction to consider any

item of damage other than that to the land. The allowance of any damages beyond this was merely conjectural and not based upon any evidence adduced. What is our duty in such case? The rule prevailing in the appellate courts of this state is that a verdict shall not be disturbed by them on the ground merely that it is against the weight of the evidence, but where the preponderance is so great as necessarily to imply passion, prejudice, or partiality, they will interfere. *Empey v. Railroad,* 45 Mo. App. 422; *Powell v. Railroad,* 59 Mo. App. 335; *Friesz v. Fallon,* 24 Mo. App. 439. And we think this to be a case calling for the application of that part of the above rule embraced in the exception.

It does not very clearly appear from the record before us how or why Yantis and the Fire Brick Company were made parties defendant; nor how or why they were dropped out of the case. The plaintiff made no complaint against them, nor did he claim any damages against them. They seem to have been volunteers in the case, who were accorded by the court the privilege of voluntarily retiring therefrom without any reason therefor being disclosed by the record. But their entrance into or exit from the case seems now to be of no importance, since, so far as we can discover, the defendant was not injured by either.

It follows that the judgment must be reversed and the cause remanded. All concur.